IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TOMMY JAMES GILLENTINE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **5:11-CV-2694-RDP-TMP** |
| ) | |
| **CORRECTIONAL MEDICAL** ) | |
| **SERVICES, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF OPINION

On February 25, 2014, the Eleventh Circuit vacated the district court's order granting summary judgment in favor of Defendants, and remanded the case to this court with instructions "to consider Gillentine's motion for an expert witness, exercising its discretion in accordance with [Federal] Rule [of Evidence] 706." (Doc. 56-1; *Gillentine v. Correctional Medical Services, et. al.*, No. 12-15334, 556 Fed. App'x 845 (11th Cir. 2014)).   In doing so, the court of appeals explained:

> We agree that, under Rule 706 of the Federal Rules of Evidence, courts have discretionary authority to appoint an expert and that discretion was not exercised here.  *See* Fed.R.Evid. 706.
>
> Rule 706 "provides the [district] court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party," and this authority is not limited to criminal cases. *See Steele v. Shah*, 87 F.3d 1266, 1270-71 (11th Cir. 1996) (determining that the district court, by failing to give an explanation for its denial of indigent plaintiff's motion to appoint an expert witness, had failed to exercise informed discretion, and requiring, on remand, the district

> court to reconsider the motion and exercise its discretion in accordance with Rule 706).

*Id.* This court understands that its previous order was vacated because it appeared that it had not recognized it has the discretion, under Rule 706, to grant the request to appoint an expert and, furthermore, it did not explain any basis for not exercising that discretion. This point is made clear in the Eleventh Circuit's opinion remanding this case:

> This court has not yet addressed the question of "whether, or under what circumstances" a district court may apportion all of the costs of a court-appointed expert to the non-indigent parties in a lawsuit. *See Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995). We decline to decide this question now and instead allow the district court to decide whether it is even necessary to reach this question.
>
> "We emphasize that we do not here offer any opinion on the propriety of appointing an expert witness; we only direct that discretion on the matter be exercised and reflected in a reasoned ruling." *Steele*, 87 F.3d at 1271.
>
> For the for[e]going reasons, we vacate the judgment and remand for the district court to consider Gillentine's motion for an expert witness, exercising its discretion in accordance with Rule 706.

*Gillentine*, 556 Fed App'x at 846-47 (footnote omitted).

In accordance with the instructions of the Eleventh Circuit, this court now considers Plaintiff's motion for appointment of an expert medical witness. (Doc. 28). Plaintiff asks the court to appoint a physician specializing in internal medicine

2

or infectious disease or liver physiology "to represent him" in this matter in order to "refute the Defendants's [(sic)] claims through expert testimony on his own." (*Id.* at 1-2). Thus, it is clear that Plaintiff is seeking the appointment of his *own* expert witness, to assist him with the presentation of his version of the case, not a "court's expert" appointed to offer neutral advice or information to the court. For the reasons discussed below, Plaintiff's motion is due to be denied.

Traditionally, Federal Rule of Evidence 706 has granted courts broad discretion to appoint an independent, neutral expert to aid the court, not an expert for a party's benefit. *See Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008) (finding no error in district court's refusal to appoint a Rule 706 expert because "Rule 706 contemplates the appointment of an expert to aid the court…. Hannah seeks an expert for his own benefit."), citing Christopher B. Mueller & Laird C. Kirkpatrick, 3 FEDERAL EVIDENCE §§ 7:25, 7:26 (3d ed.2007). Nevertheless, Eleventh Circuit precedent, while not entirely clear, seems to assume that a Rule 706 expert can be appointed to assist an indigent civil litigant. For example, in *Steele v. Shah*, 87 F.3d 1266 (11th Cir. 1996), a prisoner sued a prison psychiatrist for discontinuing his psychotropic medication previously prescribed for him. To oppose the doctor's motion for summary judgment, the prisoner "filed a motion for appointment of an expert witness and particularly requested that Dr. Carra

3

[plaintiff's former prison psychiatrist] be the appointed expert." The denial of the motion was reversed on appeal, with the court of appeals saying:

> [Plaintiff] also challenges the district court's refusal to appoint counsel and an expert witness *to assist him*.
>
> * * *
>
> Rule 706, Fed.R.Evid. provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party. [Plaintiff] invoked an exercise of that discretion and was entitled to a reasoned ruling upon it. The case is one that by its nature warrants consideration of the possible need in order to insure a just resolution of the claim. As the parties agree, the appropriate standard of psychiatric care is at issue in the case. Expert opinion on that issue and its application here obviously might be important to the finder of fact. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). *If, as he claims, [Plaintiff] is indigent, this could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinions on the issue.* See Michael H. Graham, *Federal Practice and Procedure* § 6681, at 355 (interim ed. 1992) (noting that one of the rationales for Rule 706 is that some litigants may not have the wherewithal to locate and/or pay for an expert). *See also Smith v. Jenkins*, 919 F.2d 90, 93-94 (8th Cir. 1990) (noting in another case of claimed deliberate indifference by a prison doctor the necessity of expert witnesses and the advisability of the court's appointing an expert on remand).

*Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996) (emphasis added); *see also Robinson v. United States*, 462 F. App'x 885, 887 (11th Cir. 2012) (district court did not err by appointing an attorney to help plaintiff locate an expert witness, rather than appointing a Rule 706 expert). Thus, our circuit has concluded that district courts have "authority" under Rule 706 to appoint expert witnesses to act in a purely

partisan fashion, that is, "to assist" a *party* in presenting his case, rather than simply as a neutral expert to assist the court.  Such authority exists to "avoid a wholly one-sided presentation of opinions" in the case.   This rationale clearly implies that the court of appeals views Rule 706 as authorizing the district court to appoint an expert not for its own benefit, but entirely for the benefit of the indigent litigant.  The question for this court on remand, therefore, is whether, in the exercise of discretion, it should appoint an expert witness "to assist" Plaintiff in order to "avoid a wholly one-sided presentation of opinions," that is, to attempt to refute the expert opinions of the doctors offered by Defendants.

What the court appeals left undecided in this case -- and in other cases preceding it, *see Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995) -- is whether the costs and expenses of such a partisan expert can be taxed entirely to the opposing defendants.  In addressing that issue, the court must account for certain factual mattes that put this request in context.  First, Rule 706 itself says "The expert is entitled to a reasonable compensation, as set by the court."   In a civil matter, this compensation is payable "by the parties in the proportion and at the time that the court directs--and the compensation is then charged like other costs." Fed.R.Evid. 706(c)(2).   Also, "the court may only appoint someone who consents to act."   Fed.R.Evid. 706(a).   Not surprisingly, unless medical experts selected by

5

the court are actually compensated, most will not "consent to act." Second, charging compensation "like other costs," in no way assures an expert witness that someone will actually write a check for the expert's time. The court may charge the compensation "like other costs" to either or both parties, but an indigent plaintiff is rarely able to pay his part, leaving the expert witness at least partially (if not wholly) unpaid. Because the vast majority of prisoner litigants are indigent (as Plaintiff is in this case), the appointment of medical experts in any of these cases simply means that either a defendant must pay the costs of the prisoner's expert or the expert will go unpaid.[1]

The court of appeals cited several cases in which courts have indeed shifted the entire costs of a plaintiff's Rule 706 expert witness to the defendants. *See Gillentine*, *supra*, fn. 5 (and cases cited therein).[2] Doing so in the context of

---

[1] It is true that, under the Prison Litigation Reform Act, the costs can be taxed to the prisoner litigant and collected (perhaps, if the prisoner ever has any money) over time by deductions from a prison account. But in the meantime, who will write a check to pay the expert for his time and services? Experts, like most professionals (and like other people), are not likely to be willing to wait months or years to receive small monthly payments deducted from a prisoner's account. As the magistrate judge observed, the court has no fund comparable to the Criminal Justice Act fund in criminal cases from which to pay a civil plaintiff's expert. The court may tax the expert's costs to the defendants and require them to pay, but the fairness of this seems questionable, as discussed later in text.

[2] Of course, it is questionable whether several of these cases stand for the proposition that the entire costs of a Rule 706 expert witness appointed "to assist" an indigent litigant can be shifted to the opposing party. For example, in *Webster v. Sowders*, 846 F.2d 1032, 1039 (6th Cir. 1988), the court described the appointed expert as one needed by the district court for "an independent

prisoner actions complaining about medical care essentially means in most cases that the cost will be shifted to prison guards and medical staff typically named as defendants in these actions.  The State Department of Corrections, of course, is not a defendant because of its Eleventh Amendment immunity.  While the court has discretion to grant or deny the appointment of an expert witness to assist Plaintiff, a non-dispositive factor that must weigh in that calculation is the fairness of shifting the expert costs to Defendants.  It does not seem fair to say that in every case in which a prisoner arguably has a need for an expert witness, the court must appoint an expert witness to assist that plaintiff, and require that the expert be paid by the defendants in those cases.  But if, in fact, such an appointment is not due to be made as a matter of course, what are the principled reasons for doing so in one, but not another?  That is, what criteria should a court utilize in its determination whether doing so in one case is proper, but in another it is not?  What entitles one prisoner to the assistance of an expert for advancing his claim against the defendants, but not another?  The court addresses these questions below.

---

view" on the asbestos-removal federal "regulations and whether they're being complied with," and which was "an independent monitor," not one appointed to "assist" the plaintiffs.  In *U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1058 (8th Cir. 1984) (*en banc*), the legal rationale for taxing to the government the costs of a plaintiff's expert witness, but not to the indigent party, turned on the relationship between Rules 614 and 706, which, in combination, allow a district court to call its *own* witnesses, even expert witnesses.  This logic does not necessarily support the appointment of an expert for the express purpose of assisting an indigent litigant.

Certainly some of the factors to be considered in appointment of a Rule 706 expert in medical-care cases are readily apparent: the strength of the plaintiff's non-expert evidence relating to a medical claim; the seriousness of the medical issue involved; and the degree to which expert testimony might be dispositive of (or important to) the case.  These factors, however, do not bear upon the question of the fairness of requiring a defendant to pay for an opponent's expert witness in the context of an adversarial system of litigation.  It is true, as the court of appeals pointed out, that Rule 706 allows the court to apportion the costs of an expert and then to excuse an indigent party from paying his share of the apportioned costs.  But, in the context of prisoner litigation, this means that defendants will invariably have to pay the full costs of the expert appointed to assist the prisoner plaintiff precisely because the plaintiff is almost always indigent.[3]  That imbalance could encourage prisoners to request experts not just in medical-care cases, but use-of-force cases and other conditions cases in which the assistance of such an expert might avoid a "one-sided presentation" of the facts.

---

[3] Of course, a court may order a defendant to advance the costs of the expert and then tax those costs to the plaintiff (and in favor of the defendant) should the plaintiff ultimately lose the case. But, again, this does not mean that such a defendant will ever recoup the costs advanced. Indeed, the reality is that prisoners typically have nothing from which to pay the taxed costs.  Of course, if a plaintiff wins the case, the costs would be taxed to a defendant in any event. Almost invariably, however, even when a defendant prevails, he will nevertheless end up paying for a plaintiff's expert as a practical matter.  Under either scenario, whether the plaintiff wins or loses, in virtually every case, the cost of a plaintiff's expert witness will come out of the pocket of the defendant.

The court concludes in this case, and in the exercise of its discretion under Rule 706, that Plaintiff is not entitled to the appointment of an expert medical witness, the cost for whom would have to be paid entirely by Defendants. Defendants have provided the affidavits of Defendants Dr. Hood and Dr. Barrett, two physicians who treated Gillentine. Drs. Hood and Barrett have explained, in crystal clear terms, why Gillentine is not an appropriate candidate for the antiviral treatment and the surgeries he wants — they could prove detrimental. Indeed, in the medical judgment of Hood and Barrett, they would put Gillentine as high risk.[4] So, this is not a case in which Gillentine has not been evaluated for the treatment. The undisputed record evidence shows that Gillentine was considered for a new antiviral therapy that was in clinical trials at the time, but was determined not to be a suitable candidate for the therapy.

Nor is this a situation in which Gillentine's condition has not been appropriately watched. Defendants have provided lengthy medical records establishing that Gillentine's hepatitis C has been consistently monitored and he has received treatment to control its symptoms. The records also support Defendants'

---

[4] For these reasons, this case highlights the danger of courts second-guessing medical treatment provided to prisoners except in the most obvious instances of deliberate indifference. Three doctors have concluded that antiviral treatment of Plaintiff's hepatitis C involves a risk that makes the treatment medically inappropriate for him.

contention that Plaintiff's eligibility for antiviral treatment was reviewed by another physician, Defendant Dr. Joiner, who agreed that Plaintiff was not an appropriate candidate for the reasons already discussed. Finally, there is simply no record evidence which supports the assertion that Plaintiff's antiviral treatment was denied for economic reasons; Gillentine himself acknowledges that such treatment was provided for other inmates.

The court has before it undisputed evidence that three medical professionals have provided Plaintiff with sufficient care. In addition, there are corroborating medical records from which to make a summary-judgment determination regarding Plaintiff's Eighth Amendment deliberate indifference claim. The key point is this — even if the court appointed a medical expert to assist Plaintiff, and that expert opined that antiviral treatment would be beneficial to him, that would not establish that the Defendant doctors were (or are) acting with deliberate indifference to Plaintiff's medical plight. Rather, it would simply be evidence that medical professionals, in the exercise of their respective medical judgments, disagree on the best treatment for Gillentine. The Eighth Amendment does not mandate the very best medical treatment, and a disagreement among physicians concerning the need for (or efficacy of) a particular medical treatment is not material when applying a deliberate indifference standard, so long as a reasonable physician could find the

treatment provided to be adequate. Other than Plaintiff's wholly circular (and factually unsupported) assertion that he has been denied antiviral treatment due to deliberate indifference rather than reasonable medical judgment, there is nothing in the record to suggest that an appointed expert would have any reason to conclude that Plaintiff's treatment was so grossly deficient as to amount to deliberate indifference. Plaintiff has been evaluated for inclusion in an antiviral treatment program but was found not to be an appropriate candidate for it. The sequelae of his medical condition are being controlled with medication. There is nothing to suggest the need for an appointed expert or, for that matter, if an expert were appointed, that appointment would aid Plaintiff in establishing deliberate indifference on the part of any of the Defendants. And it is precisely that question (were the Defendants deliberately indifferent to Gillentine's medical needs) that is controlling in this case — not what a different doctor might opine with respect to whether a therapy regiment would be the "best" or more efficacious approach to Gillentine's treatment.

Accordingly, the motion for appointment of a Rule 706 expert to assist Plaintiff (Doc. 28) is due to be denied.

Plaintiff also filed a motion to appoint counsel for him. (Doc. 57). Plaintiff declares in his motion for appointment of counsel that he is in need of counsel

because the issues in the case are complex and he is not educated as an attorney. Plaintiff's motion for appointment of counsel is due to be denied. Plaintiff has displayed sufficient knowledge and adequate understanding of the legal and medical issues, and has been able to follow the instructions of the court and litigate his claims.

An order consistent with this memorandum of opinion will be entered.

**DONE** and **ORDERED** this November 6, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE